UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| CAREY HIGHFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 21-052-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THE CITY OF VANCEBURG, | ) | **MEMORANDUM OPINION** |
| KENTUCKY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The City of Vanceburg Police Department hired Carey Highfield (hereafter, the "plaintiff" or "Highfield") to work as a part-time police officer in August of 2020. [Record No. 8, ¶¶ 9, 11] Unfortunately, their employment relationship soured quickly. Highfield was fired on January 19, 2021. He filed this lawsuit against the City of Vanceburg (hereafter, the "defendant" or the "City") soon thereafter, claiming that its police department violated federal and state anti-discrimination laws by rejecting his application for a full-time position on account of his age and by firing him because he filed a complaint with the Equal Employment Opportunity Commission. [*Id.* at ¶¶ 9, 11, 23-38]

The City has now moved for summary judgment on Highfield's claims. [Record No. 36] For the reasons that follow, the motion will be granted in part and denied in part.

## I. Background

Highfield has twice served as a police officer with the City's police department. [Record No. 30, p. 35] He first worked as a patrolman in May of 1996, immediately after he graduated from the police academy. [*Id.* at p. 17] Highfield resigned from that position several

months later and pursued other career paths.  [*Id.* at pp. 18-35]  He applied to work for the department a second time in May of 2019 and it kept his application on file for a year.  [*Id.* at p. 36]  The department advertised that it would "possibly be hiring two (2) Police Officer Recruits" in the summer of 2020.  [Record No. 38-3]  The advertisement specified that "[a]pplicants must be able to attend the 23-week Academy at the Department of Criminal Justice" as a condition of employment.  [*Id.*]  As Mayor Dane Blankenship explained, the department sought to hire additional recruits to reduce existing officer overtime.  [Record No. 31, p. 39]  Highfield contacted Police Chief Joseph Billman to inquire about the positions. [Record Nos. 30, pp. 35-36, 31, p. 13]

The department interviewed four individuals for the advertised positions: Highfield (age 53), Brett Lee (age 26), and Zach Prater (age 31).[1]  [Record No. 31, p. 14]  Mayor Blankenship and Chief Billman took part in interviewing all four candidates.  [*Id.*] Blankenship decided to offer Highfield a part-time position following the interview process, despite Billman's objection that he "didn't want to deal with [Highfield] again."  [Record No. 32, pp. 28, 31]  Highfield contends that Blankenship and Chief Billman promised that he would be promoted to a full-time position after another officer retired, which they expected would happen at the end of 2020.  [Record No. 30, pp. 41-42]  Blankenship and Billman deny making this promise.  [Record Nos. 31, pp. 17-18, 32, p. 51]

Around the same time that Highfield was offered a part-time position, Blankenship extended conditional employment offers to Prater and Lee.  [Record No. 32, p. 34]  Highfield claims that the other two officers were given conditional offers soon after he began working

---

[1]  Billman and Blankenship interviewed a fourth candidate, but they declined to extend an offer to that candidate after determining that he was not suitable for the position.

in August, but Billman asserts that Prater and Lee received offers in October.  [Record Nos. 32, pp. 33-34, 38, p. 4] Lee testified that he received a conditional offer of employment on October 15, 2020, and began working full time for the Department after his graduation from the police academy in December 2021.  [Record No. 29, pp. 12-15] Prater received a conditional offer on September 29, 2020, and began working full time after his graduation from the police academy in September 2021. [Record Nos. 35, pp. 10, 29, 38-5, p. 4]  Prater and Lee's employment offers were conditioned on their completing the 23-week police academy training course, the same course that Highfield completed in 1996. [Record Nos. 30, p. 13, 32, p. 34]  Blankenship denies having any reason for offering Highfield a part-time position while extending conditional, full-time offers to Prater and Lee. [Record No. 31, pp. 16-18]

Highfield began working 24 hours per week for the department in the fall of 2020. [Record No. 32, p. 28]  He was not permitted to work "on the street" until he updated his certification on several areas that had expired since he last worked for the department. [Record No. 30, p. 50, 32, p. 28]  Chief Billman explains that he would not consider Highfield for full-time employment until his certification was updated.  [Record No. 32, pp. 28-29]  The department enrolled him in several online training courses to assist the plaintiff in reaching that goal. [Record No. 30, pp. 52-57]  Highfield completed one course in November of 2020. [Record No. 30, pp. 52-53]

Highfield states that he first learned that Prater had been hired by the department in November 2020 and that Lee had been hired in January 2021.  [*Id.* at pp. 59-62]  After discovering that other officers had been hired to potentially work full-time, Highfield wrote to Mayor Blankenship, Chief Billman, and the City Council requesting a full-time position.

- 3 -

[Record No. 38-6]  Highfield's letter states that he "wish[es] to be considered for Full-Time [sic] Police Officer Position for the City of Vanceburg," and that he can work full-time "as long as [he] receive[s] Basic Officer Skills, Penal Code Update, And [sic] Constitutional Procedures within (1) year from hire date."  [*Id.*]  Highfield testified that he wrote this letter in "an attempt for [the department] to give me the position I should have gotten to start with."  [Record No. 30, p. 64]  Highfield claims that when he asked Chief Billman about the letter on January 15, Billman stated that he would no longer have a position with the department once "the young guys get out of the academy."  [*Id.* at pp. 65-66]  Billman and Blankenship assert that they did not receive Highfield's letter and did not become aware of it until after this lawsuit was filed.  [Record Nos. 31, p. 44, 32, p. 54]

On the evening of January 15, 2021, Highfield discussed his request to go full-time with Blankenship.  Mayor Blankenship had finished dinner with a friend (Robert Farrow) and needed to go back to his office to retrieve some papers.  [Record No. 31, p. 27]  Because the mayor did not have keys to his office, he asked Highfield (who was working at the time) to unlock the door.  [*Id.*]  Highfield followed Blankenship into his office after opening the door [*Id.* at p. 28, Record No. 30, p. 68] but the parties dispute what happened next.

Highfield claims that he calmly asked Blankenship about his letter requesting full-time status, to which Blankenship responded that "[y]ou was [sic] never going to be full-time."  [Record No. 30, p. 68]  He states that he asked Blankenship why the City would "spend $8,000 a piece in salary to send people through the academy that's [sic] never been through the academy?"  [*Id.*]  And Highfield further explains that he pointed to a pin on his chest, indicating that he had graduated from the academy while he spoke with Blankenship.  [*Id.*]  Highfield claims that Blankenship responded by stating that "[w]e need younger help.  Look at us.  I

could die tomorrow.  You could die tomorrow." [*Id.*]  He contends that he immediately walked out of Blankenship's office after recognizing that he was "definitely getting discriminated against 100 percent." [*Id.* at pp. 68-69]  Highfield continued to work his shift that evening and worked another shift the following day.  [Record No. 31, p. 32]

As noted, Blankenship remembers things differently.  The mayor asserts that, after Highfield unlocked the door, he "immediately started in" asking why the department did not hire him for a full-time position.  [Record No. 31, p. 23]  The defendant claims that throughout the conversation Highfield "became visibly upset, aggressively leaned over the mayor's desk" and "pound[ed] his chest and badge while demanding a promotion to full-time status." [Record No. 36-1, p. 5]  The City's motion emphasizes, and Highfield confirms, that Highfield was on duty during the encounter and was carrying a gun.  [Record No. 36-1, p. 5]  Blankenship denies saying that Highfield "could die tomorrow" or making any comment related to Highfield's age during this conversation.  [Record No. 31, pp. 22-23]

Robert Farrow provided deposition testimony regarding the confrontation, although he admits that he did not observe the entire meeting.  [Record No. 33]  Farrow states that he observed Highfield "standing up," "poking himself right in the chest," and raising his voice with the mayor, although he notes that he left the room after Highfield became more agitated. [*Id.* at pp. 13-14]  Farrow entered the mayor's office after Highfield left and noted that Blankenship looked shaken, indicating that he was frightened.  [*Id.* at p. 15]  However, Blankenship did not report the incident to Chief Billman until the following Monday.  [Record No. 31, p. 24]

Highfield met with Vanceburg City Council Member Roger Jahn the following day to discuss the confrontation with Blankenship.  Highfield told Jahn via Facebook Messenger that

he left a letter requesting full-time work on Blankenship's desk and that the mayor "got angry" when Highfield attempted to discuss his request. [Record No. 38-7]  Jahn responded that they should meet in person. [*Id.*]  During their in-person meeting later that day, Highfield claims that he told Jahn that he planned to contact the EEOC about the department's alleged discrimination. [Record No. 30, p. 77]  Jahn disagrees with this representation, claiming that Highfield never mentioned that he had suffered unlawful discrimination or that he planned to file a complaint with the EEOC. [Record No. 34, pp. 17-18]  Instead, Jahn contends that he first learned about Highfield's action against the department approximately one week later when Blankenship informed Jahn that Highfield had been fired. [*Id.* at p. 16]  Jahn further contends that, although he resides near Blankenship, he never informed the mayor of his conversation with Highfield during the weekend prior to Highfield's termination. [Record No. 34, pp. 13-14]  Blankenship testified that he does not remember whether he spoke with Jahn during this period, but claims that whenever Jahn asked about Highfield's employment he told Jahn that he "wouldn't talk about it any further." [Record No. 31, p. 36-37]

Highfield submitted an online inquiry to the EEOC on January 17, 2021. [Record No. 38-8]  He asserted that the department engaged in discrimination when it hired "2 younger guys" for full-time positions while he was only hired part-time. [*Id.* at p. 3]  Blankenship testified that he met with Chief Billman to discuss the January 15 incident on Monday, January 18, 2021, and that Blankenship ultimately decided to terminate Highfield's employment. [Record No. 31, p. 32]  Billman hand-delivered a letter to Highfield, signed by Blankenship, and notifying the plaintiff that his employment with the department had been terminated. [Record Nos. 30, p. 83, 38-9]  The letter does not state a reason for the plaintiff's termination. [Record No. 38-9]  When Highfield contacted the city's attorney for an explanation, he was

told that he was not terminated for a particular reason, but instead advised that his services were no longer needed.  [Record No. 38-10]  Highfield claims that he first learned that the department fired him because of his aggressive behavior when the defendant responded to his EEOC complaint.  [Record No. 38, p. 6]

The EEOC dismissed Highfield's complaint but issued a right to file a civil action against the City.  The plaintiff filed this action soon thereafter.  Highfield's complaint contains two counts against the City of Vanceburg.  In his Amended Complaint, Highfield asserts: (1) that the defendant violated his rights under the federal Age Discrimination in Employment Act ("ADEA") and the Kentucky Civil Rights Act ("KCRA") by "bypassing the plaintiff for a promotion to a full-time officer position, while instead promoting substantially younger, less qualified police officers . . . and [by] terminating [Highfield's] employment based on his age"; and (2) that the defendant unlawfully fired him in retaliation for his "pursuing a claim of discrimination," also in violation of the ADEA and KCRA.  [Record No. 8, pp. 4-7]

## II. The Legal Standard

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  To meet that standard, a movant must show that the nonmoving party has failed to produce evidence to support an essential element of his claim.  *See Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted)).  Once the moving party has satisfied this burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)).  In other words, the

nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation and alteration omitted).

In considering summary judgment motions, the Court construes the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. Further, the Court may not weigh the evidence or make credibility determinations, but must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

Highfield brings claims under both the ADEA and the KCRA, Kentucky's parallel anti-discrimination statute. The ADEA provides that an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the KCRA prohibits employers from refusing to hire, discharging, or otherwise discriminating against an individual because the individual is "age[d] forty (40) or over." KRS § 344.040(1)(a). The same legal analysis applies to both the ADEA and KCRA, and courts can analyze claims brought under both statutes simultaneously. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).

### III.  Legal Analysis

### A.  Highfield's Discrimination Claim

The plaintiff first asserts that the City engaged in unlawful discrimination when the department "bypasse[d] [him] for a promotion to a full-time police officer position, while instead promoting substantially younger, less qualified police officers to full-time police officer positions and terminating [his] employment based on his age."  [Record No. 8, ¶ 27] For Highfield to show that he was discriminated against "because of [his] age" under the ADEA, he must "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."  *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323-24 (6th Cir. 2021) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).  To prevail under the ADEA at the summary judgment stage, the plaintiff "must show a genuine dispute of material fact that, if resolved in [his] favor, could persuade a reasonable juror that age was the but-for cause of [the adverse employment decision]."  *Id.* at 324.

A plaintiff may demonstrate that his rights under the ADEA were violated with either direct or circumstantial evidence.  *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004).  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999).  A plaintiff may also establish a claim of discrimination with circumstantial evidence, which is analyzed according to the *McDonnell Douglas* framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003).  Under the first prong, a plaintiff must establish a prima facie case of discrimination by

offering evidence that "(1) he is a member of a protected group, (2) he is qualified for the position in question, (3) his employer took an adverse employment action against him, and (4) there are 'circumstances that support an inference of discrimination.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012)). Once a plaintiff has made this initial showing, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment action at issue. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). Thereafter, the plaintiff must respond by showing "that the [defendant's] proffered reason was actually a pretext to hide unlawful discrimination." *Id.*

A court considering a plaintiff's ADEA claim at the summary judgment stage must determine "whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

## 1. Direct Evidence

The parties dispute whether Highfield has offered direct evidence that the defendant discriminated against him based on his age. Highfield claims that Blankenship's purported statement that "[w]e need younger help. Look at us, I could die tomorrow. You could die tomorrow" constitutes direct evidence of the department's discriminatory hiring practices. [Record No. 38, pp. 9-10] He argues that the statement "require[s] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" because it was made by a person with ultimate hiring authority and because it was in direct response to Highfield's question concerning why he was not hired full-time. [*Id.* (citing *Johnson*, 319 F.3d at 865)]

The defendant argues that the statement does not constitute direct evidence because it does not directly mention or refer to Plaintiff Highfield's age.  [Record No. 36-1]

Direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson*, 319 F.3d at 865 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).  Courts look to four factors when considering whether an alleged statement constitutes direct evidence of discrimination, none of which are dispositive: "(1) whether the statements were made by a decision-maker . . . ; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Pelcha*, 988 F.3d at 325 (citing *Diebel v. L&H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012)); *see also Robinson v. Runyon*, 149 F.3d 507, 512-14 (6th Cir. 1998) ("[R]arely will there be direct evidence from the lips of the defendant proclaiming his or her . . . animus.").  If a plaintiff presents direct evidence of discrimination, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Nguyen*, 229 F.3d at 563.

The undersigned concludes that Highfield has not presented direct evidence of age discrimination.  On the one hand, the statement in issue was made by Blankenship, the person with ultimate decision-making authority with respect to the hiring process.  *See Pelcha*, 988 F.3d at 325 (recognizing that the fact that the defendant who made discriminatory remarks "served as the President and CEO of [the company]" and "was the individual who terminated [the plaintiff] suggested that remarks constituted direct evidence").  The statement also

allegedly occurred only three days before Highfield was fired, which undoubtedly satisfies the "proximate in time" factor. *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 992 (6th Cir. 2009) (finding that statements made two months before adverse employment decision were temporally proximate). But no factor is dispositive and, regarding temporal proximity, the Sixth Circuit has found that discriminatory remarks made close in time to an adverse employment decision constitute direct evidence "only where the employee presents strong evidence of one or more of the other factors above." *Diebel*, 492 F. App'x at 527.

Highfield's claimed direct evidence is insufficient because he cannot demonstrate that Blankenship's comments were related to the decision-making process or that they occurred with frequency. Blankenship allegedly made the comment at issue in response to Highfield's question concerning why Prater and Lee were given full-time positions. The decision to hire Prater and Lee is wholly separate from Blankenship's later decision to fire Highfield, and nothing in the statement suggests that Blankenship's comments were related to Highfield's termination. *See Pelcha*, 988 F.3d at 325 (finding no direct evidence when discriminatory remarks "were not made in relation to [Plaintiff's] termination" or to "any termination decision"). To find that the comments suggested discrimination, a jury would need to infer that Blankenship's reference that Highfield "could die tomorrow" meant that (1) he thought that Highfield was too old for the job, (2) that a younger person was better suited for the position, and (3) that he fired Highfield because of that belief. As the Sixth Circuit has explained, an employer's expressed desire "to attract young people . . . says nothing about terminating older employees." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020); *see also id.* at 326 ("Hiring younger [employees] does not require the termination of older employees."). In summary, Blankenship's statement alone does not

- 12 -

"compel the conclusion" that Highfield was fired because of his age.  *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (finding that statements from management about "the general need to lower the average age of [the company's] workforce" cannot be directly tied to the decision to fire plaintiffs and so do not constitute age discrimination).

Finally, even if the statement was made in reference to Highfield's termination, the fact that Blankenship made this statement on only one occasion weighs against a finding of direct evidence.  *See Pelcha*, 988 F.3d at 325 (finding no direct evidence when "nothing in the record suggests that the statements were more than isolated remarks").  Considering all the above factors, Highfield has not shown that Blankenship's alleged remarks on January 15 constitute direct evidence that he suffered discrimination because of his age.

## 2.  Circumstantial Evidence

Highfield also argues that he can establish a prima facie case of age discrimination utilizing circumstantial evidence.   Under *McDonnell Douglas*, a plaintiff proving discrimination based upon circumstantial evidence must first establish a prima facie case of discrimination.  *See Willard*, 952 F.3d 795, 808 (6th Cir. 2020).  Highfield makes three arguments regarding this claim and each will be addressed in turn.

### i.  Failure to Hire

Highfield asserts that he was discriminated against on the basis of his age when the Police Department failed to hire him for a full-time position.  [Record No. 8, ¶ 27]  Regarding this claim, he states that he was treated differently than similarly situated applicants when he was hired as a part-time officer.  [Record No. 38, pp. 11-13]  In response, the City asserts that Highfield was not discriminated against because "no one was hired as a full-time officer during

Plaintiff's employment."  Further, the department extended only conditional job offers to Prater and Lee, pending their graduation from the academy.  [Record No. 39, pp. 3-4]  The City argues that, because "no one was hired to replace [Highfield]," he has not established a prima facie case of discrimination.  [*Id.* at p. 4]

The standard to be applied when evaluating a prima facie case of discrimination is slightly modified regarding failure-to-hire claims.  A plaintiff asserting a claim of discrimination based on a failure to hire must offer proof "(1) that he is a member of a protected class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) a similarly situated person who was not in the plaintiff's protected class received the job."  *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003).  To determine whether the person who received the job was similarly situated, courts consider "the relative qualifications of the plaintiff and the employee who actually received the promotion."  *Provenanzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011).

The City maintains that Highfield cannot show that the department discriminated against him when it hired him to a part-time position because no full-time position existed when he was hired and because he was not replaced by a younger employee after his termination.  [Record Nos. 36-1, pp. 11-12, 39, p. 3]  It argues that, because Highfield was the only part-time officer at the department and his position was later eliminated, "[t]here were no other similarly situated employees" in comparison with which he could have been less favorably treated.  [Record No. 36-1, pp. 11-12]  But the City misconstrues the requirements for establishing a prima facie case in the failure to hire context.  Courts have recognized that a plaintiff alleging a claim of failure-to-hire may show either "that he was replaced by a younger worker, or [alternatively], that he was treated less favorably than similarly situated employees,

- 14 -

if he wasn't replaced." *Meyrose v. Vitas Hospice Servs., LLC*, No. 19-91, 2021 WL 5139478, at * 3 (E.D. Ky. Nov. 3, 2021) (citing *Willard*, 952 F.3d at 808). In *Meyrose*, another judge of this Court held that, although the plaintiff's position was eliminated after he was fired, the plaintiff still met his burden of showing a prima facie case of discrimination because he could show that he did not receive opportunities that other, younger employees received. *Id.* at * 5.

Similarily, the City's argument that Highfield's position was eliminated does not prevent him from showing that he was treated less favorably than similarly situated applicants. Highfield can demonstrate that, at the time he was hired, he was "treated differently [than] employees who were similarly situated but not members of the protected group." *Zambetti v. Cuyahoga Cnty.*, 314 F.3d 249, 255 (6th Cir. 2002). Highfield, Prater, and Lee responded to the same job posting, which advertised that the department would be hiring "two (2) Police Officer Recruits," and all candidates were interviewed at approximately the same time. [Record Nos. 29, p. 22, 31, pp. 42-43, 35, p. 18, 38-3] Highfield was treated differently by the department when, following his interview, he received an offer of part-time employment while Prater and Lee received conditional offers of full-time employment.

Moreover, the City's suggestion that Highfield was somehow less qualified for a full-time position because he "had fallen behind on the necessary training required to be a full-time police officer" does not detract from his claim. A plaintiff making a prima facie case of discrimination for failure to hire need only offer evidence that he possesses "similar qualifications to the employee who received the promotion [or job]," which Highfield has done. *Provenanzano*, 663 F.3d at 814. The record reflects that Highfield was *more* qualified than Lee and Prater when he applied for a position in that he had graduated from the police academy while the younger officers had not. [Record No. 31, p. 39] The fact that Highfield

needed to update several courses does not make him unqualified for the position when compared to younger officers who had yet to complete their training. *See Anthony*, 339 F.3d at 515-16 (finding that candidates who both lacked qualifications for a position were "similarly situated for the purposes of reviewing [the plaintiff's] claim"). The City's argument that Highfield "would have been considered for full-time employment" once he updated his training may be true, but it has no bearing on his claim that he was treated differently at the time he was hired. [Record No. 39, p. 3] In summary, Highfield has established a prima facie case of age discrimination with evidence that he received a part-time position while Lee and Prater received conditional full-time offers.

Because Highfield has established a prima facie case, the burden shifts to the City to articulate "some legitimate, nondiscriminatory reason" for its decision. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). And it provides the following reasons in response. It claims that it was not required to give Highfield a full-time position; Highfield was hired for a part-time position with the expectation that he would work full-time once he updated his training; and no one received a full-time offer of employment while Highfield worked for the department. [Record No. 39, pp. 2-4] But these reasons do not directly address the plaintiff's claim.

Highfield is not claiming that the ADEA requires that he receive a full-time position at the time he applied, but that he should have been treated similarly to the other candidates who applied with him. The fact that the department was not required to hire Highfield full-time does not explain why it treated Lee and Prater differently. And the fact that Highfield could have qualified for a full-time position after updating his training does not explain why he was hired part-time while Lee and Prater (although similarly lacking training) were given

- 16 -

conditional full-time offers.  Finally, even if no other officer received an offer for full-time employment while Highfield worked for the department, Prater and Lee's conditional full-time offers guarantee the potential of full-time employment while Highfield's part-time position does not.

The record supports an additional, nondiscriminatory reason why Highfield was hired part-time rather than full-time.  Chief Billman states that he "was completely against hiring Mr. Highfield" because he had "dealt with [Highfield] in 1996 and [he] didn't want to deal with him again."  [Record No. 32, pp. 28-29]  Billman's suggestion that Highfield was not hired full-time because of difficulties during the plaintiff's prior term of employment with the department would constitute a nondiscriminatory reason for his different treatment.  *See, e.g.,* *Pelcha*, 988 F.3d at 326 (noting that terminating employment for employee's insubordination constitutes a legitimate reason); *Gribcheck v. Runyon*, 245 F.3d 547, 551-52 (6th Cir. 2001) (holding that employer gave legitimate reason for suspending employee following a violent incident with a coworker in which employee exhibited "conduct unbecoming a postal employee").  However, the City did not cite in its brief Billman's objection as a reason why Highfield was not hired full-time nor did it provide any details explaining Billman's statement. [*See* Record No. 36-1, p. 2.]  Thus, the defendant has not stated a legitimate reason for its hiring decision with sufficient specificity to meet its burden of production under the second prong of *McDonnell Douglas*.

An employer providing a legitimate, nondiscriminatory reason for its actions "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257-58 (1981).  The burden is not a high one, but

- 17 -

the employer must at the very least provide an "explanation of its legitimate reasons [that is] clear and reasonably specific." *Id.* (citation omitted).  This requirement serves to ensure both that the defendant can rebut the inference of discrimination established at the first step of *McDonnell Douglas*, and that "the plaintiff be afforded a 'full and fair opportunity' to demonstrate pretext." *Id.*

The Circuit Court for the District of Columbia has identified four factors to consider in determining whether a defendant-employer has met its evidentiary burden at the second step of *McDonnell Douglas*:

> First, the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding) . . . Second, the factfinder, if it "believed" the evidence, must reasonably be able to find that "the employer's action was motivated by" a nondiscriminatory reason . . . Third, the nondiscriminatory explanation must be legitimate. In other words, the reason must be facially "credible" in light of the proffered evidence . . . [And] as the fourth factor, the evidence must present a "clear and reasonably specific explanation."

*Figueroa v. Pompeo*, 923 F.3d 1078, 1087-88 (D.C. Cir. 2019).

And the Sixth Circuit held that an employer's claim that he "did what he thought was best for [the employer]" when he chose not to renew the plaintiff's contract was an imprecise, subjective reason that was legally insufficient to rebut the plaintiff's prima facie case. *Tye v. Bd. of Educ. of Polaris Jt. Voc. Sch. Dist.*, 811 F.2d 315, 319 (6th Cir. 1987), *abrogated in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).   Similarly, in *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, the Sixth Circuit found that an employer could not rebut a plaintiff's prima facie case of discrimination when the employer's procedures for hiring were too subjective as to explain specifically why the plaintiff was not hired.  *See* 690 F.2d 88, 96 (6th Cir. 1982).

In *Rowe*, the employer claimed that it did not hire the plaintiff because "persons to whom the employment decision was delegated did not want him." *Id.* The district court referred to evidence in the record that the plaintiff had twice been admonished to stay at his post while on the job, concluding that his prior record of poor performance would constitute a legitimate reason explaining the defendant's refusal to hire the plaintiff. *Id.* at 96-97. But the circuit court disagreed, finding that, while the evidence of the plaintiff's past infractions could constitute a reason, it "[did] not approach the level of specificity required by *Burdine*." *Id.* at 97 (citing 450 U.S. at 258). The court further noted that the evidence of prior admonitions did not provide the plaintiff with an adequate opportunity to demonstrate pretext. *See id.* ("A plaintiff cannot disprove as a cause for his failure to be rehired a source of dissatisfaction of which he is unaware.").

In the same way here, Chief Billman's statements that he "didn't want to deal with [Highfield] again" are not specific enough to rebut Highfield's prima facie case of discrimination. [Record No. 32, p. 29] Billman provides no details regarding Highfield's previous employment with the City, nor does the City explain Billman's statement in its motion. Moreover, as Highfield notes, Blankenship testified that he had no reason for hiring him only part-time and did not refer to Billman's objection to the hiring decision. [Record No. 38, pp. 12-13] When asked repeatedly if he had a reason for hiring Highfield part-time, Blankenship answered "No. Do I have to?" [Record No. 31, p. 16] Of course, the ADEA does not "abolish[] an employer's managerial prerogatives or its right to refuse to hire undesirable employees." *Rowe*, 690 F.2d at 96. But Blankenship's non-answer and Chief Billman's vague assertions do not provide Highfield with any details regarding why he was hired part-time, making the defendant's proffered reasons "the equivalent of offering no reason at all."

*Figueroa*, 923 F.3d at 1092.  Finding that the defendant met its burden here would undermine the purpose behind the *McDonnell Douglas* burden-shifting framework by leaving Highfield without "targets at which to aim" when demonstrating pretext.  *Id.* at 1091.  Based on the foregoing, the Court concludes that the City has failed to meet its burden under the second prong of *McDonnell Douglas*.

A defendant's "failure to introduce evidence of a nondiscriminatory reason will cause judgment to go against it unless the plaintiff's prima facie case is held to be inadequate in law or fails to convince the factfinder."  *St. Mary's Honor Ctr.*, 509 U.S. at 510 n.3.  Highfield has made a prima facie case that he was discriminated against on the basis of his age when he did not receive a conditional, full-time offer of employment.  Because the City has failed to meet its burden under the second prong of *McDonnell Douglas*, its motion with respect to Highfield's failure-to-hire claim will be denied.

### ii.  Failure to Promote

Highfield next asserts that the City engaged in discrimination when it failed to promote him to a full-time position.  He claims that, in January of 2021, the City denied his "written and verbal requests to be promoted to a full-time police officer position" while hiring two "substantially younger applicants."  [Record No. 38, p. 12]  Like in a failure-to-hire claim, under the first step of *McDonnell Douglas* a plaintiff alleging discrimination based on a failure to promote must show that he: (1) is a member of a protected class; (2) applied for and was qualified for a promotion; (3) was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000).  The City's motion for summary judgment will be

granted with respect to this claim because Highfield cannot establish a prima facie case of discrimination.

Here, although the parties do not address Highfield's prima facie case regarding his failure-to-promote claim, he cannot demonstrate that he was qualified to be promoted to a full-time officer or that someone with similar qualifications received the promotion at the time his request was denied. Highfield specifically requested to be employed full-time in his letter and during his conversation with Blankenship on January 15; however, the undisputed evidence demonstrates that he was not qualified to serve as a full-time police officer when he made this request. [Record Nos. 30, p. 68, 31, p. 22, 38-6] Highfield agrees that he had not yet updated his certification by January of 2021, which was a requirement for working as a full-time officer. [Record Nos. 30, p. 50, 32, p. 28] Highfield did not meet the objective requirements to become employed as a full-time officer when he asked to be promoted. As a result, he cannot establish that he suffered discrimination when his request was denied. [Record No. 30, p. 57]; *see Anthony*, 339 F.3d at 516 (finding no prima facie case for failure to promote to quality engineer because plaintiff lacked objective qualifications such as a college degree).

Additionally, Highfield cannot show that Prater and Lee received their promotions to full-time status at the time that his request was denied. The younger officers were not employed as full-time employees until April and December of 2021, which was months after Highfield's employment was terminated. [Record Nos. 29, pp. 12-15, 35, pp. 10, 29, 38-5, p. 4] While they had received conditional offers of employment in January of 2021, Prater and Lee were not "promoted" to full-time status until months later, and not until they had completed the requisite training for the position. [*See* Record No. 29, p. 8, 35, p. 13.] Highfield does not contradict this point, and only claims that Prater and Lee were hired before his

termination because he saw them riding with an officer before they went to the academy. [Record No. 30, p. 99]  But such an observation does not create a genuine dispute of material fact, given that the evidence in the record confirms that the younger officers did not work full-time until they were fully qualified for the position.

In summary, Highfield has failed to offer evidence that he was qualified to work as a full-time officer in January of 2021, or that Prater and Lee were promoted to full-time employees at the same time.  Thus, the City is entitled to summary judgment on Highfield's failure-to-promote claim.

### iii.  Highfield's Termination

Finally, Highfield claims that the City discriminated against him by "terminating [his] employment based on his age."  [Record No. 8, p. 4]  The parties agree that Highfield has established the first three elements in demonstrating a prima facie case regarding this claim: specifically, that at 53 years old, he is a member of the protected class under the ADEA, he was qualified for a full-time position with the Police Department; and he suffered an adverse employment action when he was terminated.  [Record No. 36-1, p. 11]  And Highfield can show "circumstances that support an inference of discrimination" with evidence of Blankenship's alleged statement that Highfield "could die tomorrow."  *See Pelcha*, 988 F.3d at 326 (finding that "allegedly ageist comments . . . by [a supervisor] are sufficient to raise a plausible inference of discrimination" under the first prong of *McDonnell Douglas*).  Given that Highfield has met his burden at the first step of the *McDonnell Douglas* framework, the City must provide a nondiscriminatory reason for the plaintiff's termination.

The City claims that Highfield was fired for his "unprofessional and even frightening" behavior when he asked Blankenship for a promotion on January 15.  [Record No. 36-1, p. 12]

The Sixth Circuit has recognized that an employee's unbecoming behavior constitutes a legitimate reason for termination. *See Gribcheck*, 245 F.3d at 551-52 (finding that employer provided legitimate reason for suspending employee due to employee's "violence in the workplace, including vulgar language"); *cf. Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013) ("We have repeatedly held that insubordination may constitute a legitimate, nondiscriminatory reason for adverse action.") (citations omitted). As such, the burden shifts back to Highfield to offer evidence that the City's proffered reason for his firing was pretextual.

A plaintiff generally can demonstrate that an employer's reasons for taking an adverse employment action are pretextual in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citation omitted). The three categories are not meant to be applied rigidly, but all serve the purpose of "marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citation omitted). The plaintiff must provide evidence at the summary judgment stage establishing a genuine dispute of material fact "from which a jury could reasonably reject [the employer's] explanation of why it fired [him]." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). In the present case, Highfield has presented three arguments in support of his claim that the defendant's reason for firing him was pretextual: (1) its stated reason has no basis in fact; (2) evidence of Blankenship's statements support an inference of discrimination; and (3) its failure to provide a reason at the time the plaintiff was fired suggests that its given reason is fabricated.

### a. No Basis in Fact

Highfield contends that the City's claim that he was fired because he became "unhinged" on the evening of January 15 is pretextual because it has no basis in fact. [Record No. 38, pp. 15-17]  In support, the plaintiff cites his own testimony in which he states that he spoke in a conversational tone and at a normal volume with Blankenship. [*Id.* at p. 16]  He also cites Blankenship's and Farrow's depositions, which indicate that Blankenship did not report Highfield after the incident or otherwise limit his duties. [*Id.* at p. 17]  Highfield claims that Blankenship's inaction after their conversation suggests that his behavior did not create an "emergent security threat" that would justify his termination the following Monday.  In response, the City states that Highfield "himself admits that he confronted the mayor in his office" on January 15, and that the testimony of Blankenship and Farrow supports the conclusion that he acted aggressively. [Record No. 36-1, p. 13]

A plaintiff challenging an employer's stated reason for his termination on the ground that it has no basis in fact must "provide evidence that the employer's allegations never happened." *Miles*, 946 F.3d at 889 (citing *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)).  To offer such evidence, the plaintiff must do more than simply deny the employer's allegations. *See Gribcheck*, 245 F.3d at 552 (quoting *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987) ("Disputation of the facts underlying [the defendant's] legitimate business reason . . . is not sufficient to carry [the plaintiff's] burden.")).  Instead, he must "take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Irvin*, 837 F.2d at 726.

Highfield has provided sufficient evidence to meet his burden.  As an initial matter, he does not dispute that he followed Blankenship into his office on January 15 and asked for a

promotion.  But he contends that he has presented evidence that he did not act inappropriately while making his requests.  However, his conclusory assertions that he did not threaten Blankenship are insufficient to meet the burden of establishing pretext.  *See Gribcheck*, 245 F.3d at 552-53 (finding that plaintiff could not show that employer's rationale had no basis in fact when plaintiff merely denied employer's allegations and alleged that supervisor "was a bald-faced liar").  Notwithstanding this fact, Highfield has presented additional evidence suggesting that no aggressive conduct occurred.  Specifically, he notes that no disciplinary action was taken immediately following the January 15 incident, and that Farrow and Blankenship rode together after the incident without reporting Highfield or taking further action.  [Record Nos. 31, p. 24, 33, p. 22]  The evidence supporting those facts, viewed in the light most favorable to the plaintiff, suggests that Highfield did not threaten or otherwise frighten Blankenship during their meeting.  *See Willard*, 952 F.3d at 812 (finding that plaintiff had established a genuine dispute as to whether employer's stated rationale for firing lacked basis in fact, as plaintiff's statement in sheriff's report established that he did not instigate violent incident at work).  In summary, Highfield has presented sufficient evidence for a jury to decide whether he acted aggressively toward Blankenship on January 15, thereby providing the mayor with a legitimate reason to fire him.

### b.  Discriminatory Remarks

Highfield also claims that Blankenship's statements during the January 15 incident (previously discussed as potential direct evidence) also support his assertion that the City's stated reason for his firing was pretextual.  Courts consider "the role of the speaker, the substance of the comments, and the nexus to the adverse employment action to determine the

probative value of discriminatory statements at the pretext stage." *Willard*, 952 F.3d at 812 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-56 (6th Cir. 1998)).

In *Willard*, the circuit court found that the plaintiff had established pretext with evidence of his supervisor's ageist insults, including alleged statements that the plaintiff was an "over-the-hill" salesman and that he was "old and fat." *Id.* at 813. It concluded that the statements were probative of pretext because the supervisors who allegedly made them "participated in the decision to terminate [the plaintiff]" and the statements were made within a week of the plaintiff's termination. *Id.* Additionally, it found the statements probative because their substance "evinces a strong bias against older workers and a desire to see Willard leave the dealership due to his age." *Id.*; *see also Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir. 2009) (finding that manager's frequent derogatory remarks about female police officers were probative evidence of pretext because they "suggest[ed] an atmosphere hostile to the promotion of female officers").

By contrast, in *Pelcha v. MW Bancorp, Inc.* the Sixth Circuit held that a plaintiff did not present evidence probative of pretext with statements that her supervisor stated that another employee was "past her 'expiration date'" and "had a 'limited shelf life.'" 988 F.3d at 327. It emphasized that the statements were infrequent, not directed toward the plaintiff herself, and were not unambiguously ageist as to establish a genuine dispute that her employer made up its stated reason for firing her. *Id.* Similarly, Highfield has not shown that Blankenship's comments on January 15 establish "the existence of a discriminatory atmosphere" that would support a finding of pretext. *Smith v. City of Toledo*, 13 F.4th 508, 518-19 (6th Cir. 2021). Assuming Blankenship made the remarks as Highfield claims, those isolated remarks do not alone create a genuine dispute that the Police Department made up its reason for firing the

plaintiff.  The alleged statement was directed toward Highfield, made by the person who fired him, and was made three days before his termination.  But importantly, Highfield claims that Blankenship only made the alleged remarks on one occasion, which is too infrequent to support an inference of discrimination.  Also, as discussed above, Blankenship's comments may be offensive, but they do not unambiguously lead to the conclusion that Blankenship sought to fire Highfield because of his age.  *See Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) ("Isolated and ambiguous comments will not support a finding of discrimination.") (citation omitted).

Highfield has failed to show that a single offensive comment allegedly made by his supervisor is proof that he was fired because of his age.

### c.  Failure to Provide Justification

Finally, Highfield claims that he can establish pretext with evidence that the City waited too long before providing a reason for his termination.  His claim that "Blankenship did not tell anyone his claimed reasons for terminating Mr. Highfield until months later" suggests that the City's police department fabricated its given rationale.  [Record No. 38, p. 17]  The defendant maintains that the failure to provide a reason at Highfield's initial firing is not evidence of pretext because "an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  [Record No. 36-1, p. 14 (citing *Miles*, 946 F.3d at 886)]

But an employer's shifting rationales for terminating an employee can serve as evidence that its stated rationale is pretextual.  *See Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) ("Shifting justifications over time calls the credibility of those justifications into question.").  However, the Sixth Circuit has distinguished a situation in

- 27 -

which an employer provides shifting justifications from one in which the employer fails to provide a reason.  In *Miles*, the court held that an employer did not provide shifting rationales when it first gave a reason why it fired the plaintiff in its response to the plaintiff's EEOC complaint. 946 F.3d at 891.  As the court explained, the employer's reasons "[did] not conflict with the reason stated at the time of discharge because [the employer] provided *no reason* at the time of discharge." *Id.* (citing *MacDonald-Bass v. J.E. Johnson Cont., Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012) (noting that an employer's "providing additional non-discriminatory reasons that do not conflict with the one stated at the time of discharge does not constitute shifting justifications")); *see also Alexander v. Ohio State Univ. Coll. of Soc. Work*, 429 F. App'x 481, 490 (6th Cir. 2011) (finding no evidence of pretext when supervisor gave additional reasons why plaintiff was fired because the reasons given at a later date were not inconsistent with initial reasons).

Here, Highfield cannot show that Blankenship's failure to provide a reason at his initial termination supports his claim of pretext.  The parties do not dispute that Highfield was an at-will employee who could be fired for any reason, provided the reason was not discriminatory. As in *Miles*, merely stating that an employee is being fired "without notice and without reason" does not in itself establish pretext.  946 F.3d at 891.  The fact that the City first mentioned Highfield's aggressive behavior as the reason for his termination is similarly not probative of pretext.  The City explained why it fired Highfield in response to his EEOC complaint, and that has remained its rationale since that time.  In short, Highfield has failed to establish that the City's proffered rationale supports an inference of discrimination.

In summary, the plaintiff has established that a genuine dispute of material fact exists regarding whether the City's reason for firing him was pretextual by presenting evidence that

the aggressive conduct which the City claims justified his termination never happened. However, Highfield's attempts to establish pretext with evidence of Blankenship's statements and the City's failure to timely provide a reason why he was fired are unavailing. Because the plaintiff has provided sufficient evidence from which a reasonable juror could find that his employment with the City was terminated because of his age, the defendant's motion for summary judgment regarding the plaintiff's claim that he was discriminated against when he was fired will be denied.

### B.  Highfield's Retaliation Claim

Highfield next claims that the City engaged in unlawful retaliation under the ADEA and the KCRA when it fired him response to his "good faith opposition to Vanceburg's unlawful practice of age discrimination and his participation in pursuing a claim of discrimination." [Record No. 8, pp. 6-7]  He contends that Vanceburg City Council Member Roger Jahn likely told Blankenship that Highfield planned to filed an EEOC Complaint, and that Blankenship fired him several days later in retaliation for making that complaint.  [*Id.* at pp. 18-19]  Additionally and alternatively, Highfield claims that his written and verbal requests to go full-time constitute "legally protected activity" under the ADEA, such that Blankenship engaged in unlawful retaliation when he fired the plaintiff in response to that request.  [*Id.* at p. 19]

The City argues that there is no evidence that Jahn contacted Blankenship about Highfield's EEOC complaint or that Blankenship otherwise knew about the complaint, so the plaintiff cannot show that Blankenship fired the plaintiff in retaliation for his actions.  [Record No. 36-1, p. 16]

To establish a prima facie case of retaliation under the ADEA, a plaintiff must offer evidence that "(1) he engaged in activity protected by [the ADEA]; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted).  The City does not dispute that Highfield engaged in a legally protected activity when he filed his EEOC complaint, or that he suffered an adverse employment action when he was fired.  [Record No. 36-1, p. 16]  Instead, the parties' contention centers on whether Blankenship knew about the complaint at the time he fired Highfield.

Direct evidence of an employer's knowledge of a plaintiff's protected activity is not required.  Instead, "a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002).  Circumstantial evidence can take the form of actions or statements from the employer suggesting that the employer knew that the plaintiff had engaged in protected activity.  *See Allen v. Mich. Dept. of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999) (finding circumstantial evidence that employer knew that plaintiff-correction officer filed grievance when plaintiff was the only officer transferred to another cell block); *Barrow v. City of Cleveland*, 773 F. App'x 254, 262 (6th Cir. 2019) (holding that office memo modifying procedures for filing employee grievances that employer issued soon after plaintiff filed complaint was circumstantial evidence of employer's knowledge); *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 531 (6th Cir. 1989) (finding that supervisor commenting "I know where

you've been" when plaintiff returned from visiting state civil rights department constituted circumstantial evidence of supervisor's knowledge).

A plaintiff may also establish an employer's knowledge with evidence of "prior interaction of individuals with such knowledge and those taking the adverse employment action." *Mulhall*, 287 F.3d at 553 (citing *Kralowec v. Prince George's Cnty., Md.*, 503 F.Supp. 985 (D. Md. 1980)).   In *Kralowec*, the district court found that the plaintiff had proved her employer's knowledge with evidence that one county official who knew of the plaintiff's protected activity interacted with a second official before the second official fired the plaintiff. 503 F.Supp. at 1010.  By contrast, the Sixth Circuit held in *Mulhall* that the plaintiff had not produced sufficient evidence of his employer's knowledge based on prior interactions.  It found that Mulhall's case was distinguishable from *Kralowec* because Mulhall could not show that the first official who knew of his protected activity "actually participated in the adverse employment action in the present case."  287 F.3d at 553.  The court also found that the plaintiff's evidence was insufficient because he failed to "allege[] facts of prior interactions . . . that make it reasonable to infer that the former would discuss [the protected activity] 'as soon as he obtained this information.'"  *Id.* (citing *Kralowec*, 503 F.Supp. at 1010).

Similarly, in *Crane v. Mary Free Bed Rehabilitation Hospital* the Sixth Circuit held that a plaintiff who claimed she was denied a promotion because she complained about workplace discrimination did not prove that her boss knew of her complaint with evidence that her boss interacted with another supervisor with knowledge prior to interviewing the plaintiff. 634 F. App'x 518, 526-27 (6th Cir. 2015).  Although the plaintiff provided evidence that two other supervisors knew of her complaint, she could not show that the supervisors with knowledge took part in the promotion decision or otherwise influenced the decisionmaker.  *Id.*

As the court explained, the plaintiff's allegations that the two supervisors with knowledge could have informed the supervisor who denied her the promotion were "unsupported suspicions" that "cannot establish a . . . theory of liability for unlawful retaliation." *Id.* at 527; *see also Evans v. Pro. Transp., Inc.*, 614 F. App'x 297, 302-03 (6th Cir. 2015) (finding no inference that employer knew of plaintiff's protected activity when third-party supervisor knew of activity, as "there is no evidence that [the third-party supervisor] was involved in the decision to fire the plaintiff").

Here, Highfield has not established a genuine dispute that Blankenship knew about his EEOC complaint when he fired the plaintiff.  Viewing the evidence in a light most favorable to Highfield, he has presented a dispute regarding whether he told Roger Jahn about the complaint when he spoke with Jahn on January 16.  [*See* Record Nos. 30, p. 77, 34, pp. 17-18.]  But even if Jahn knew about the complaint, Highfield has failed to present any non-speculative evidence that Jahn communicated that information with Blankenship before January 18.  It is undisputed that Jahn did not influence the hiring process for the department, and Highfield has presented no evidence that Jahn "actually participated" in the decision to terminate the plaintiff's employment.  *See Mulhall*, 287 F.3d at 553.

Additionally, Highfield's claim that that prior interactions between Jahn and Blankenship prove that Blankenship knew of the EEOC complaint is unavailing.  Highfield's suggestion that Jahn and Blankenship spoke about his complaint because they live in the same neighborhood, without any further evidence that they spoke about the EEOC charge, is simply too speculative to meet the plaintiff's burden.  [*See* Record No. 38, p. 19.]  Additionally, the plaintiff claims that Blankenship and Jahn's testimony regarding their interactions the weekend of January 15 is "conflicting and creates a jury issue."  [Record No. 38, p. 18]

Highfield is correct that Jahn testified that he did not speak to Blankenship until days after Highfield was fired, while Blankenship testified that he "[couldn't] recall" whether he spoke with Jahn during that period.  [Record Nos. 31, pp. 36-37, 34, p. 13]  That said, Blankenship maintained that even if he spoke to Jahn that weekend, he never discussed Highfield's situation.  [Record No. 31, pp. 36-37]   Establishing that Jahn and Blankenship could have interacted that weekend does not prove that they spoke about Highfield.  And even if they did, like in *Crane*, the mere fact that Jahn spoke with Blankenship does not prove that Blankenship knew of the complaint or fired Highfield because of it.  *See* 634 F. App'x at 526-27.  The plaintiff has offered nothing more than "unsupported suspicions" to suggest that Jahn spoke to Blankenship about his EEOC complaint.  *Id.* at 527.  As a result, he has failed to establish a prima facie case that the City's police department engaged in unlawful retaliation.

As an alternative theory, Highfield asserts that he engaged in protected activity when he made verbal and written requests to be promoted to a full-time position.  [Record No. 38, p. 19]  He grounds his claim in the "opposition clause of Title VII," which mirrors the language of Section 623(d) of the ADEA: "It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section."  29 U.S.C. § 623(d).  In *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, the Supreme Court broadly interpreted the opposition clause in holding that an employee who answered questions about sexual harassment in the workplace during an internal investigation engaged in protected activity. 555 U.S. 271, 276 (2009).  The Court noted that an employee need not file a complaint or initiate an investigation to be protected under the clause, as "nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same

discrimination in the same words when her boss asks a question." *Id.*; *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2003) ("Employees engage in protected oppositional activity when, *inter alia*, they 'complain to their superiors about suspected violations of Title VII.'") (citation omitted).

Several courts have recognized that an employee's conduct that does not affirmatively object to an employer's alleged discrimination is not covered by the oppositional clause. In *Fields v. Locke Lord Bissell & Liddell LLP*, a district court found that an employee did not engage in protected activity when she forwarded an email to her supervisor that she claimed was discriminatory. No. 1:07-CV-2984, 2009 WL 2341981, at * 13 (N.D. Ga. July 28, 2009). It found that the conduct was not protected because the plaintiff "never made any statement that could be considered as a 'complaint' about [the email]," did not "tell [her supervisor] that she believed [the email] was an act of discrimination," and did not "point[] to any evidence that she told [her supervisor] she 'opposed' the statements in the email." *Id.* The court rejected the plaintiff's argument that by forwarding the email she "implicitly communicated . . . that she opposed the statements" and found that no viable claim under the opposition clause because the plaintiff did not expressly oppose the employer's conduct. *Id.*; *see also EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018) ("For this reason, we agree with the district court that the EEOC failed to establish a prima facie case of opposition-clause unlawful retaliation because 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation.'") (citation omitted).

Highfield has not shown either that his letter seeking full-time work or that his conversation with Blankenship on January 15 constitute protected activity under the ADEA. Like in *Fields*, Highfield has presented no evidence that in either his letter or his conversation

he complained about the department's hiring or opposed their discriminatory practices. *See* 2009 WL 2341981, at * 13. Highfield's letter states that he "wish[es] to be considered for Full-Time [sic] Police Officer Position for the City of Vanceburg," and when he spoke with Blankenship on January 15, he merely asked to be promoted to a full-time position. [Record No. 30, p. 68, 31, p. 30] The plaintiff has not provided any evidence that his requests to work full-time were anything more than that—requests. Because Highfield has not shown that he complained about the department's alleged discrimination when he asked for a full-time position, he has not established that those requests constitute oppositional activity under the ADEA. Accordingly, the defendant's motion for summary judgment as to Highfield's unlawful retaliation claim will be granted.

## IV. Conclusion

The defendant's motion for summary judgment will be granted in part and denied in part. Plaintiff Highfield has established a genuine issue of material fact regarding his claim that the City of Vanceburg's Police Department discriminated against him when it offered him a part-time position while extending conditional full-time offers to two younger recruits. Further, Highfield has provided sufficient evidence to meet his present burden to demonstrate that Highfield's stated reason for terminating his employment was pretextual. However, the plaintiff has failed to establish a genuine issue of material fact regarding his claim of retaliation because he has not shown that Blankenship knew of his EEOC complaint at the time the plaintiff was fired. Therefore, the City's motion for summary judgment will be granted regarding Highfield's retaliation claim.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant City of Vanceburg's motion for summary judgment [Record No. 36] is **GRANTED IN PART** and **DENIED IN PART,** consistent with this Memorandum Opinion and Order.

Dated: November 29, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky